```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
PATRICK LEVANTINO, RASPBERRY JUNCTION    :    15cv5349(DLC)
PROPERTIES, LLC, JULIA TATE              :
PROPERTIES, LLC, RASPBERRY JUNCTION      :    OPINION & ORDER
HOLDING, LLC, and JULIA TATE HOLDING,    :
LLC,                                     :
                                         :
                    Plaintiffs,          :
                                         :
          -v-                            :
                                         :
STARWOOD MORTGAGE CAPITAL LLC and        :
CHUCK WOLTER,                            :
                                         :
                    Defendants.          :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiffs Patrick Levantino, et al.:

Andrea L. Kim
DIAMOND McCARTHY LLP
Two Houston Center
909 Fannin Street, 15th Floor
Houston, TX 77010

Jared C. Borriello
DIAMOND McCARTHY LLP
489 Fifth Avenue, 21st Floor
New York, NY 10017

For defendants Starwood Mortgage Capital LLC and Chuck Wolter:

Paul E. Chronis
Elinor Hart Murárová
DUANE MORRIS LLP
109 South LaSalle Street, Suite 3700
Chicago, IL 60603

DENISE COTE, District Judge:

Plaintiffs allege that Starwood Mortgage Capital LLC ("Starwood") made an enforceable commitment to loan money to them. In reliance on Starwood's commitments, the plaintiffs terminated a favorable loan arrangement with another lender. When Starwood reneged on its commitment, plaintiffs were unable to arrange another loan on as favorable terms. They have sued Starwood and one of its former executives for damages.

Defendants have moved to dismiss the entirety of the complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. ¶ 12(b)(6). Because of the reservation of rights in the Starwood loan application, plaintiffs have failed to plead reasonable reliance on Starwood's oral assurances and the motion to dismiss is granted.

## BACKGROUND

The following facts are taken from the second amended complaint ("Complaint") or from documents integral to it. Patrick Levantino ("Levantino") is a businessman who controls and substantially owns the co-plaintiff corporations. Raspberry Junction Properties, LLC ("RJP") and Julia Tate Properties, LLC ("JTP") each own a piece of real estate in Connecticut. RJP owns the Bellissimo Grande Hotel in North Stonington, Connecticut (the "Bellissimo"); JPT owns the Hilton Garden Inn

2

Preston Casino in Preston, Connecticut (the "Hilton").

As of 2013, the plaintiffs were seeking to refinance their construction loan on the Bellissimo.  The loan had been financed since 2009 by Wells Fargo, which also provided lending to JTP for the Hilton, but the term of the loan was ending and the plaintiffs wished to explore other financing opportunities.

Beginning in June 2013, Levantino began to negotiate with Starwood and the former Executive Vice President of Starwood, Chuck Wolter ("Wolter"), for two 10-year commercial loans that would be secured by the Bellissimo and the Hilton.  Plaintiffs and Starwood agreed on principal terms for the loans on September 9.  As agreed, the loans would total $24 million over ten years, with a fixed interest rate.

On September 16, Levantino signed and submitted to Starwood a written loan application embodying those terms.  Among other things, that application stated that

> <u>Neither this Application</u> nor SMC's receipt of a Complete Application . . . <u>constitutes a contract or commitment by SMC to provide financing</u> with respect to the Property.  No agreement (whether written, oral or otherwise) that may be reached during negotiations with respect to financing the Property, nor any course of dealing between the parties, shall constitute a commitment by SMC to lend or otherwise be binding upon the parties; provided, however, <u>final loan document[s] shall be binding upon the parties if, and only if,</u> (1) the final loan documents have been executed, delivered and accepted by all parties, (II) the Loan has been approved by SMC in its sole and absolute discretion and (III) <u>the Loan actually closes</u>.  Applicant

>acknowledges and agrees that SMC is under no
>obligation whatsoever to fund the Loan.

By October 1, pursuant to the ongoing due diligence process, plaintiffs had provided to defendants a large amount of detailed financial information concerning the Bellissimo and the Hilton. On October 15, Wolter informed Levantino that the loan would close in early November.

Meanwhile, on October 17, Wells Fargo offered plaintiffs a loan on materially more favorable terms than Starwood's, the principal difference being a lower interest rate. Levantino informed Wolter that plaintiffs were terminating their loan application with Starwood in light of Wells Fargo's offer.

On November 4, Levantino apprised Wolter by email that the Wells Fargo loan agreement was close to execution and indicated that he "want[ed] to st[a]y with Starwood." In response, Wolter stated in an email that he "would do" two ten-year loans totaling $26 million and carrying an interest rate more favorable than that offered by Wells Fargo, with the sole condition that it had to "close on or before December 20," 2013. Defendants also made a telephone call to plaintiffs promising that the loan "was approved" on those terms; they further promised that Levantino could receive a larger cash-out payment at closing and that only interest payments needed to be made on the loans for the first 24 months. On November 11, Wolter

informed Levantino by telephone that the loans had been approved by Starwood's credit committee.  On or about this time, plaintiffs terminated negotiations for the Wells Fargo loan.

The next day, November 12, Levantino signed and submitted to Starwood a second loan application embodying the new terms.  The second application contained language concerning the nature of the application that was identical to the first, including the statement that an application did not "constitute[] a contract or commitment by SMC to provide financing," that no agreements "during negotiations . . . [or] any course of dealing . . . shall constitute a commitment by SMC to lend or otherwise be binding upon the parties"; and that an agreement was binding if and only if there were a closing.  Wolter informed Levantino that the application was a "formality" because the loans had been approved in October.

Starwood resumed the due diligence process, which continued through November and early December.  On December 12, Levantino met Wolter in Houston to review the finances of the Bellissimo and Hilton and finalize certain loan details.  During this trip, Wolter raised the issue of Massachusetts's gaming laws, indicating that Starwood was untroubled by the prospect of casinos opening in Massachusetts during the period of the loan.

On December 17 and 18, defendants sent copies of the final

5

loan documents to plaintiffs, which were approved by Levantino and his corporate counsel. On December 18, plaintiffs executed the final loan documents and sent them to defendants by overnight mail, and plaintiffs were informed by telephone that the loans were closed in escrow and would fund the next day.

On December 19, plaintiffs' counsel received a package containing various executed documents -- for example, open-ended mortgage and security agreements; an assignment of leases and rents; and a cross-collateralization and contribution agreement -- as well as instructions for recording those documents with relevant local registries upon funding of the loans. Later that day, however, Wolter informed Levantino that the Starwood credit committee would not fund the loan. Defendants explained that Starwood had discovered that Massachusetts's 2011 "Expanded Gaming Act" would permit casinos to open in Massachusetts, an adjacent state. Starwood never signed a final loan agreement and did not fund either loan.

Plaintiffs negotiated a temporary extension of their Wells Fargo loan and avoided default, but incurred approximately $52,690 in costs and penalties. They obtained alternative financing on April 7, 2014, but the terms were less favorable than those offered by either Starwood or Wells Fargo in 2013. Plaintiffs allege that they have incurred hundreds of thousands

6

of dollars in out-of-pocket legal and professional fees, $3,921,734 in additional interest, and $2,796,824 in additional costs as a consequence of defendants' conduct.

On February 7, 2015, plaintiffs filed suit against defendants in the United States District Court for the Southern District of Texas. Defendants moved to dismiss the complaint or, in the alternative, to transfer the action to this court pursuant to the parties' agreed-upon forum selection clauses. Their motion to transfer was granted on July 2.

On August 31, plaintiffs filed the Complaint in this Court. The Complaint alleges five causes of action. First, it asserts two claims of breach of contract against Starwood, one for the Bellissimo loan and the other for the Hilton loan. In the alternative, plaintiffs allege three claims against both Starwood and Wolter: promissory estoppel, negligent misrepresentation, and fraud.

Defendants filed this motion to dismiss all five claims on September 22. The motion was fully submitted on October 23.

## DISCUSSION

When deciding a motion to dismiss under Rule 12(b), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d

7

471, 475 (2d Cir. 2009) (citation omitted).  In deciding a motion to dismiss, the court considers "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference."  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted).  Plaintiffs did not attach either of the two Starwood loan applications at issue to their Complaint; they also did not attach the November 4 email from Wolter to Levantino.  The Complaint adverts to the loan applications and emails from Wolter on several occasions.  Accordingly, the Complaint is "deemed to include" the initial applications and the email.  L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted).

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Parkcentral

Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted).

I. Breach of Contract

Plaintiffs first allege that Starwood breached contracts to provide loans secured by the Bellissimo and the Hilton. "To state a claim for breach of contract under New York law,[1] the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015) (citation omitted). Plaintiffs' claims for breach of contract fail because the contract on which the plaintiffs rely for these claims was never entered by the parties.

As plaintiffs acknowledge, although a variety of documents were exchanged and executed by the parties, defendants never signed a final loan agreement -- that is, they never signed the agreement that plaintiffs seek to enforce in this action. As importantly, Levantino signed two loan applications whose terms preclude finding any binding agreement here. The applications

---

[1] The parties do not contest the applicability of New York law and they rely on it in their memoranda of law. Accordingly, it will be applied here. See, e.g., Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005) (applying New York law where "parties do not dispute that New York law applies").

explicitly provide that "[a]ny final loan documents shall be binding upon the parties <u>if, and only if</u>, (1) the final loan documents have been executed, delivered and accepted by all parties, (II) the Loan has been approved by SMC in its sole and absolute discretion and (III) the Loan actually closes." (Emphasis added.) Plaintiffs were bound by this document at the time they allege two contracts were formed, but do not assert that each of the three conditions to the formation of a binding contract were met. For instance, they do not contend that any loan closed. A "cause[] of action for breach of contract . . . [is] properly dismissed" if "flatly contradicted by [an] agreement[] . . . expressly stat[ing] that neither party had any legal obligations to the other until" certain satisfied conditions were met. <u>Prestige Foods, Inc. v. Whale Sec. Co., L.P.</u>, 663 N.Y.S.2d 14, 15 (1st Dep't 1997). Plaintiffs' breach of contract claims are thus barred as a matter of New York law.

Plaintiffs nonetheless argue that an enforceable loan agreement was formed on or about December 19, 2013, because the parties had reached agreement on "all material terms of the loans." But, in unambiguous terms, the loan applications Levantino received informed him that Starwood had not yet given any binding commitment to lend the plaintiffs money. Starwood "[was] under no obligation whatsoever to fund the Loan" unless

10

two conditions in addition to an agreement on its terms were satisfied -- namely, that the loan was also approved by Starwood "in its sole and absolute discretion" and that the loan actually closed.  Because the Complaint does not allege that those conditions were satisfied, it does not plausibly assert that plaintiffs and defendants ever reached an enforceable agreement.  Plaintiffs' breach of contract claims accordingly fail.[2]

II. Promissory Estoppel

Plaintiffs bring three additional claims in the alternative.  The first of these is that plaintiffs are entitled to damages under the doctrine of promissory estoppel.

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000).  In addition, courts often require a fourth element -- that the alleged injury suffered in reliance on the promise was unconscionable -- to be pleaded where a promissory estoppel claim is asserted to avoid the Statute of Frauds.[3]  See Merex

---

[2] For this reason, it is unnecessary to reach the defendants' argument that the New York Statute of Frauds also precludes finding that the parties reached an enforceable loan agreement.

[3] "Unconscionable injury" is "injury beyond that which flows

A.G. v. Fairchild Weston Sys., Inc., 29 F.3d 821, 826 (2d Cir. 1994).

Defendants argue that plaintiffs' promissory estoppel claim duplicates their breach-of-contract claims and that plaintiffs cannot meet the applicable "unconscionable injury" standard. In addition, defendants argue that plaintiffs have failed to plead a "clear and unambiguous promise" and that any reliance was reasonable.

It is unnecessary to reach each of the issues raised by the defendants. Plaintiffs' promissory estoppel claim fails because they do not adequately allege the third element, reasonable reliance. "In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Crigger v. Fahnestock & Co., 443 F.3d 230, 235 (2d Cir. 2006) (citation omitted). While this is ordinarily a fact-intensive inquiry, in the appropriate case this may be decided as an issue of law.

Where a preliminary agreement "explicitly requires the execution of a further written agreement before any party is

---

naturally (expectation damages) from the non-performance of [an] unenforceable agreement." Merex A.G. v. Fairchild Weston Sys., Inc., 29 F.3d 821, 826 (2d Cir. 1994).

contractually bound, it is unreasonable as a matter of law for a party to rely upon the other party's promises to proceed with the transaction in the absence of that further written agreement." StarVest Partners II, L.P. v. Emportal, Inc., 957 N.Y.S.2d 93, 96-97 (1st Dep't 2012).  Similarly, a provision in an agreement "permitting defendant to withdraw, in its sole judgment, upon the existence of various conditions" defeats a "plaintiff's claim of reasonable reliance on [a] defendant's promises."  Prestige Foods, 663 N.Y.S.2d at 15.

    The principles underlying StarVest and Prestige Foods apply here.  Plaintiffs had signed a loan application with Starwood in September of 2013 that advised them that "approval" of any loan -- such as that they assert was conveyed in November -- was only one of three necessary conditions for the final loan agreement to be consummated.  The application also advised the plaintiffs that Starwood retained the unrestricted right to refuse to execute the agreement or fund the loan.  Despite these warnings, plaintiffs chose to terminate their loan negotiations with Wells Fargo after Wolter provided oral notice that the loan was "approved."  Plaintiffs were sophisticated commercial borrowers with extensive experience negotiating and securing large real estate loans.  As a matter of law, any reliance upon Wolter's alleged statement was unreasonable.

Plaintiffs contend that other facts alleged in the Complaint -- that due diligence on the proposed loans had been ongoing for several months at the time of the November conversations; that defendants had been aggressively pursuing resumption of loan negotiations with plaintiffs during plaintiffs' negotiations with Wells Fargo; and that the specific terms of the loan were agreed upon -- demonstrate that their reliance was reasonable.  But plaintiffs knew that Starwood reserved an unrestricted right to disapprove the loan at any time, and that Starwood was not committed to fund the loan until it closed.  Accordingly, plaintiffs' promissory estoppel claim must be dismissed for failure to allege reasonable reliance as a matter of law.

III. Negligent Representation

Plaintiffs allege two claims sounding in tort.  The first is a claim of negligent misrepresentation, also based on Wolter's alleged representation that the loan was "approved." "To prevail on a claim of negligent misrepresentation under New York law, a plaintiff must show (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  <u>Crawford v. Franklin Credit Mgmt. Corp.</u>, 758 F.3d

473, 490 (2d Cir. 2014) (citation omitted).

Defendants argue that, as a matter of law, plaintiffs have not pleaded reasonable reliance. For the reasons described above, they are correct.

Defendants are also correct that the "special relationship" required to assert a negligent misrepresentation claim is not adequately alleged. The scope of the requisite "special relationship" is narrow. "Liability in the commercial context is imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." Id. (citation omitted). "Professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients." Kimmell v. Schaefer, 89 N.Y.2d 257, 263 (1996). In contrast, "an arm's length borrower-lender relationship does not support a cause of action for negligent misrepresentation . . . even if there is a long-standing relationship between the customer and a particular bank employee or if the parties are familiar or friendly." Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 N.Y.3d 565, 578 (2011) (citation omitted). This is because "an arm's length borrower-lender relationship is not of a

15

confidential or fiduciary nature." River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp., 743 N.Y.S.2d 870, 871 (1st Dep't 2002).

Plaintiffs allege that a special relationship existed because Wolter repeatedly stressed Starwood's specialized expertise in the commercial mortgage market and Wolter persisted in pursuing Levantino's business using "aggressive . . . pressure tactics" even as plaintiffs were engaged in negotiations with Wells Fargo.  But these allegations are inadequate allegations that defendants "possess[ed] unique or specialized expertise" with respect to plaintiffs.  Greenberg, 17 N.Y.3d at 578 (citation omitted).  Allegations that a party "claimed special expertise in bridge loans to forestall foreclosures" do not suffice, Crawford, 758 F.3d at 490, and plaintiffs' allegations that Starwood claimed expertise here are of the same nature.  Moreover, a "claim that [a defendant] had superior knowledge of the particulars of its own business practices is insufficient" to show a special relationship.  MBIA Ins. Corp. v. Countrywide Home Loans, Inc., 928 N.Y.S.2d 229, 235-36 (1st Dep't 2011).  And in the context of a transaction between sophisticated market participants, mere use of alleged pressure tactics did not place defendants "in a special position of confidence and trust" with plaintiffs.  Greenberg, 17 N.Y.3d

16

at 578 (citation omitted).  The cases plaintiffs cite to show the contrary are inapposite or unpersuasive.[4]  Accordingly, their claim of negligent misrepresentation fails on this independent ground.

IV. Fraud

Finally, defendants assert a claim of fraud.  "Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 170 (2d Cir. 2015).[5]  Defendants make three arguments for dismissing this claim.  It is only necessary to reach one.  Defendants argue that, as a matter of law, plaintiffs have not pleaded "justifiable reliance."  For the reasons described

---

[4] For instance, the Court of Appeals concluded that a relationship "beyond the typical arm's length business transaction" had been pleaded through allegations that the defendants engaged in a course of conduct intended to keep plaintiffs from confirming the defendants' representations. Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001).

[5] In addition to the pleading requirements of Rule 12(b)(6), Rule 9(b) states that "[f]raud must be pled with particularity" and identifies four necessary elements. Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted).  Defendants do not contest that plaintiffs have satisfied this standard.

17

above, they are correct that plaintiffs' reliance, if any, was not justifiable.  Accordingly, plaintiffs' fraud claim cannot stand.

**CONCLUSION**

Defendants' September 22, 2015 motion to dismiss is granted.  The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:      New York, New York
            November 20, 2015

                                    _____
                                            DENISE COTE
                                    United States District Judge